NANCY A. HILL, APPELLANT, v. WARREN HANFORD, GUARDIAN, RESPONDENT.

*Step-father — right to charge for support of step-son — Pension.*

A widow, at the time of her remarriage, was entitled, as the guardian of a child seven years old, to receive a pension for him of about seventy-five dollars per year until he arrived at the age of sixteen. It was agreed that the child should live with the step-father, and it was understood between the step-father and mother that the pension should be given to the former for the support of the boy. The pension was accordingly given by the mother to the step-father and the boy was supported by him until after he arrived at sixteen years of age, after which he voluntarily left him.

In an action by a new guardian of the boy to compel the mother to account for the pension received by her, *held*, that she was entitled to be credited with

the reasonable value of the support and maintenance of the boy while he lived with the step-father.

*Williams* v. *Hutchinson* (3 N. Y., 317) distinguished.

APPEAL from a decree entered in the surrogate's court of Tompkins county, upon a final accounting.

Nancy A. Hanford, the widow of Irus Hanford, and the mother and general guardian of Charley Hanford, when Charley was seven years old, married Wesley F. Hill. Charley was entitled to a pension, commencing at that time and continuing till he was sixteen. She received that pension, as his guardian, every six months. He is now over sixteen, and, by a new guardian, asks an accounting for this money, in all $659.83. She charges him for board and education furnished by Mr. Hill. The surrogate disallowed the charge, and she appeals.

It appears that before the marriage, and before the boy went to live at Mr. Hill's, the mother said to Mr. Hill that she would like to keep the boy with her, and he said he was willing to do this. She then brought the boy from her sister's, where he had been. Afterwards, when she was appointed guardian and Mr. Hill signed her bond, she said, or it was said in her presence, that he was safe in signing the bond, because he would have the pension money to pay for taking care of the boy till he was old enough to work and support himself. Mr. Hill bought and paid for the boy's clothing during all the time that he lived with Mr. Hill and till he went away of his own accord; and Mr. Hill boarded and supported him. Mrs. Hill was accustomed to hand the pension money to Mr. Hill, as it was received.

Mr. Hill testified that his wife paid him at the rate of twelve shillings per week for the boy's board and clothing; but he adds that there was no arrangement between him and his wife about the money being paid for the support of the child. He did not keep an account against the boy because, as he says, he took the boy as his own to bring up. He lived on a farm. Mrs. Hill testifies that she gave this money to her husband to board and clothe the boy.

*Jerome Rowe*, for the appellant.

*King & Montgomery*, for the respondent.

LEARNED, P. J.:

The surrogate disallowed the guardian's claim on the authority of *Williams* v. *Hutchinson* (3 N. Y., 317) and of similar cases. These cases hold that, in the absence of express agreement, if a step-father takes a step-child into his family and educates and supports him as his own, the law will imply no promise on either side; neither on the child's part to pay for his support and education, nor on the father's part to pay for services rendered.

But the present question is different. It arises between the guardian and the ward. The question is whether she was justified in appropriating his income, as received, to the compensation of the step-father.

Now Mr. Hill knew that the ward was entitled to this income. When the mother was appointed guardian, Mr. Hill was told that he would have the money to pay for taking care of the boy until he was old enough to pay for himself. And so, as a matter of fact, he did receive, every six months, this money from the guardian. It is not necessary, therefore, as in the other class of cases, to imply any promise to pay the step-father. Because, in fact, the guardian has been paying him, from time to time, as this support has been rendered. And there is no evidence that the money was received by him in any other way than on account of the support which he was furnishing.

It is true that Mrs. Hill says that it was a part of the consideration of the marriage that Mr. Hill was to take the boy and treat him as one of his own family. But this is explained by the statement, subsequently made, that Mr. Hill would have the pension money, or what was necessary, to pay for taking care of him. If Mrs. Hill had not married, she would undoubtedly have applied all this pension money, of about seventy-five dollars per annum, to the support of this boy. It was not unreasonable, when Mr. Hill married her and took into his family this boy, then seven years old, that both Mr. Hill and the mother should take into account the fact that this pension money would help to compensate him during the boy's younger years.

In the case of *Sharp* v. *Cropsey* (11 Barb., 224) the doctrine of *Williams* v. *Hutchinson* (*ut supra*) is again laid down. It was held that the step-father could not recover against the step-son,

under similar circumstances, for support. But it also appeared in that case that the court of chancery allowed the step-father and mother maintenance for the infant, out of his property, during a part of his minority. And so, in the present case, it seems to me that there is evidence that the guardian, who had control of the ward's property, did in fact apply it, from time to time, to the payment of the support furnished by Mr. Hill, as far as should be necessary. There may have been no definite agreement, but such is the fair understanding from the circumstances. And the application was just what was done by the court of chancery in the case last cited.

For these reasons, I think that the reasonable value of the support and maintenance should have been allowed, and that the decree should be reversed and the matter sent back to the surrogate to ascertain, determine and allow the same.

Present — Learned, P. J., Bockes and Boardman, JJ.

Decree overruled and matter sent back to surrogate to settle.